**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **ESTHER G. DERANAMIE,** | ) ) ) | **CIVIL ACTION** |
| Plaintiff, | ) ) | NO. 4:15-CV-40120-TSH |
| v. | ) ) | |
| **SEIU LOCAL 509 AND COMMUNITY HEALTH LINK, INC.,** | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON COMMUNITY HEALTH LINK, INC.'S PARTIAL MOTION TO DISMISS (Docket No. 6) AND SEIU LOCAL 509'S MOTION TO DISMISS (Docket No. 8)**

**November 19, 2015**

**HILLMAN, D.J.**

Esther G. Deranamie brought this suit against her former employer and her labor union after being terminated from her positon as a rehabilitation specialist. The crux of her complaint is that the employer warned and then terminated her without just cause, and the union neglected its duties by failing to file grievances in response to these actions. The employer and the labor union have moved separately to dismiss all but one count of Plaintiff's complaint. For the reasons set forth below, Community Health Link, Inc.'s partial motion to dismiss (Docket No. 6) is ***granted*** and SEIU Local 509's motion to dismiss (Docket No. 8) is ***granted***.

**Background**

The following facts are taken from Plaintiff's verified complaint and assumed true for the purposes of these motions. Esther G. Deranamie (Plaintiff) is an individual who resides in Worcester, Massachusetts. She identifies as African American and is of Liberian descent.

1

Community Health Link, Inc. (CHL) is her former employer. SEIU Local 509 (SEIU) is an organized labor union of which Plaintiff is a member. SEIU has a Collective Bargaining Agreement (CBA) with CHL. Between April 4, 2009 and July 17, 2014, Plaintiff was employed by CHL in various positions as a residential counselor and a rehabilitation specialist.

In early 2013, Plaintiff began working as a rehabilitation specialist at CHL's Chelsea House. In February of 2014, there was a verbal altercation between the Assistant Program Coordinator, Tina Damstrom, and Plaintiff. In early March of 2014, the Treatment Coordinator, Samantha Waskiewicz, informed Plaintiff that she had observed Plaintiff falsifying a former employee's signature. SEIU was notified, and there was a meeting between Waskiewicz, Plaintiff, and a union representative. After this meeting, the union representative told Plaintiff that the issue had been resolved without a warning. On March 13, 2014, however, Plaintiff learned that a "final warning" had been issued to her as a result of the signature falsification issue. SEIU took no action with regard to this warning. Plaintiff continued to work and perform her usual duties at Chelsea House.

On or about June 1, 2014, a CHL client approached Plaintiff and complained about being placed on the cooking schedule two days in a row. The client became upset and called Plaintiff a racial epithet. The client also told Plaintiff that he was paying $1,000 per month to CHL, and that CHL should hire staff to cook and clean. Plaintiff reported this incident to the Program Coordinator, Wendy Jackson, the day after it happened.

On June 16, 2014, an "Individual Action Plan" meeting was held, involving the client who had insulted Plaintiff. This meeting was also attended by Damstrom, Waskiewicz, and a clinician, Melissa Ann Astukiewicz. Plaintiff was not a participant in the meeting but was present in the common work space in which it occurred. At the end of the meeting, in response to the question

of whether anyone had anything to say, Plaintiff told the participants that they should tell the client that he does not pay $1,000 per month to Plaintiff.  The client responded and began to talk over Plaintiff in a loud voice, and Plaintiff continued to speak until Astukiewicz shouted to Plaintiff, "Esther, shut up." (Docket No. 9 at ¶ 33.)  Plaintiff stopped speaking, Astukiewicz apologized for yelling, and the meeting ended.

The next day, Plaintiff was terminated on the ground that she had disrupted the Individual Action Plan meeting.  SEIU was notified of the termination but took no action.  According to Plaintiff, SEIU had a duty pursuant to the CBA to defend Plaintiff against dismissal without just cause.  The CBA provides a grievance procedure and also establishes that permanent employees will not be disciplined or discharged except with good cause.[1]  There is no indication that Plaintiff attempted to initiate the grievance procedure.

Instead, Plaintiff filed a lawsuit against CHL and SEIU in Worcester Superior Court.  She asserted seven counts: (1) wrongful termination by CHL; (2) breach of contract by CHL; (3) employment discrimination by CHL; (4) discrimination by SEIU; (5) & (6) breach of contract by SEIU; and (7) violation of Mass. Gen. Laws ch. 93A.  The case was removed to this Court, with jurisdiction based on section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

CHL has moved to dismiss counts I (wrongful termination), II (breach of contract), and VII (Chapter 93A), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  SEIU has moved to dismiss counts IV (discrimination), V-VI (breach of contract), and VII (Chapter 93A).

---

[1] Although the CBA was attached as an exhibit to CHL's motion, this Court may consider it in the context of a motion to dismiss because the document's authenticity is not disputed and it is central to Plaintiff's claims. *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

The only count not subject to one of these motions is count III, which alleges employment discrimination against CHL.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000).

## Discussion

1. *Preemption by Section 301 of the LMRA*

Section 301 of the LMRA, 29 U.S.C. § 185(a), provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." Although section 301 "on its face is only a grant of federal jurisdiction, the Supreme Court has deemed labor contracts within its scope 'creatures of federal law' and 'treats section 301 as a warrant both for removing to federal court state law claims preempted by section 301 and then dismissing them.'" *Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54 (1st Cir. 2011) (quoting *O'Donnell v. Boggs,* 611 F.3d 50, 53 (1st Cir. 2010)) (citations omitted). "This doctrine 'applies most readily to state-law contract claims

purporting to enforce CBAs covered by section 301,'. . . but it 'extends beyond this point to other claims . . . whose enforcement interferes with federal labor law and policy.'" *Id.* (quoting *O'Donnell,* 611 F.3d at 53, 54). This type of "interference exists if the state-law claims 'require construing the collective-bargaining agreement.'" *Id.* (quoting *O'Donnell,* 611 F.3d at 54) (citation omitted).

Thus, section 301 preempts a state law claim when the claim "plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'" *Id.* at 54-55 (quoting *Flibotte v. Pa. Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir. 1997)). A state law claim "'depend[s] on the meaning of a collective bargaining agreement' if either (1) 'it alleges conduct that arguably constitutes a breach of duty that arises pursuant to a collective bargaining agreement,' or (2) 'its resolution arguably hinges upon an interpretation of the collective bargaining agreement.'" *Id.* at 55 (quoting *Flibotte,* 131 F.3d at 26) (internal quotation marks omitted); *see Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 10 (1st Cir. 1995) ("It is well-established that § 301 completely preempts a state law claim if the resolution of the claim necessitates analysis of, or substantially depends on the meaning of, a collective bargaining agreement.").

CHL argues that Plaintiff's wrongful termination claim (count I) is preempted by section 301 of the LMRA because this claim alleges that Plaintiff's status as a member of SEIU provides protection, through the CBA, against termination without cause. Plaintiff, for her part, contends that the wrongful termination claim does not depend on the CBA. She argues that CHL "created a situation whereby it cannot discharge the plaintiff without cause," apparently apart from the CBA. This argument is directly contradicted by the language in the complaint, in which Plaintiff claims wrongful termination because she was terminated without just cause, in violation of the CBA. This claim explicitly depends on the CBA, and its resolution requires an interpretation of

the CBA in order to determine whether or not Plaintiff was an at-will employee and whether there was adequate cause for her termination. Count I is dismissed as preempted by section 301 of the LMRA.

2. *Preemption by the Duty of Fair Representation*

In addition to preemption under section 301 of the LMRA, state law claims can be preempted "by operation of the so-called duty of fair representation (DFR)." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 830 (1st Cir. 1997). The DFR derives from a union's status as the exclusive bargaining agent for its members. *Id.* This duty implicates section 9(a) of the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a), and "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* (quoting *Vaca v. Sipes,* 386 U.S. 171, 177 (1967)). "A union must discharge its duty both in bargaining with the employer and in its enforcement of the resulting collective-bargaining agreement." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563 (1990). The union must also "pursue . . . grievances in a manner consistent with the principles of fair representation." *Id.* Because a "complaint that states a DFR claim 'allege[s] a breach by the Union of a duty grounded in federal statutes,'" the cause of action is governed by federal law. *BIW Deceived*, 132 F.3d at 830 (quoting *Vaca,* 386 U.S. at 177). Accordingly, "state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation." *Id.*

SEIU argues that Plaintiff's discrimination claim (count IV) is preempted by the DFR. Unfortunately, this claim is scantly pled, stating only that Plaintiff "adequately performed her job," was a member of a "protected class," was subject to "some adverse employment action," and "was

6

treated differently from other similarly situated non-African American/Liberian member [sic] of SEIU Local 509." (Docket No. 9 at ¶ 50.)  Given the context of the other allegations in the complaint, this claim appears to allege that SEIU discriminated against Plaintiff by failing to file grievances on her behalf, because of her status as an African-American of Liberian descent.  It is important to note that Plaintiff does not appear to have filed a complaint against SEIU with the Massachusetts Commission Against Discrimination (MCAD), which is a prerequisite to asserting a discrimination claim under state law. *See* Mass. Gen. Laws ch. 151B, § 5.

Assuming arguendo that Plaintiff has made the requisite filing with the MCAD, however, the claim is nevertheless preempted.  Although Plaintiff argues that this allegation is for discrimination, the claim clearly implicates the DFR because the complained-of conduct is that SEIU failed to serve Plaintiff's interests, by filing grievances on her behalf, in a nondiscriminatory manner. *See Terry*, 494 U.S. at 563.  Thus, the claim is preempted, and Count IV is dismissed.

3. *Hybrid Preemption*

If a claim involves an alleged breach of the DFR by the union and an alleged breach of the CBA by the employer, it is considered a hybrid claim. "Hybrid claims involve alleged wrongdoing on the part of both the employer and the union with respect to the rights of employees." *Fant v. New England Power Serv. Co.*, 239 F.3d 8, 14 (1st Cir. 2001). "If, in an action alleging a breach of the duty of fair representation, the employee seeks relief for a related breach of contract by the employer, the employee's claim against the employer is 'based upon' a breach of the labor contract within the scope of section 301." *Id.* (citation omitted).  "In these hybrid cases, the court must resolve whether the union failed in fairly representing the employee and whether the employer acted in violation of the CBA terms." *Id.*  Each part of the hybrid claim requires interpretation of

the terms of the CBA and, consequently, state law aspects of the claim will be preempted. *Id.*; *see DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165-66 (1983).

Plaintiff alleges in counts V and VI that SEIU breached the CBA by failing to file grievances on her behalf after she was warned and then terminated. In count VII, Plaintiff alleges that this same conduct by SEIU constituted a violation of Mass. Gen. Laws ch. 93A.[2] SEIU argues that Plaintiff's claims against it for breach of contract, as well as the Chapter 93A claim, are hybrid claims and are preempted by both section 301 and the DFR. Plaintiff also alleges in count II that CHL breached the CBA by terminating her without just cause. CHL asserts the same arguments as SEIU with regard to this claim. Plaintiff argues that her breach of contract claim against CHL is not a hybrid claim and that her allegations arise independent of the CBA. She asserts that her claim is premised on "her assertion that CHL dismissed her because of defendant's acts and relationship with her and other similarly situated employees." (Docket No. 15 at 4.) She does not address SEIU's argument regarding the breach of contract claims asserted against the union. With regard to the Chapter 93A claim, Plaintiff asserts that SEIU is "in the business of providing 'Fair Representation services' to its members" and that this conduct is regulated by Chapter 93A. (Docket No. 15 at 5.)

The breach of contract claims are hybrid claims. They depend on the CBA because Plaintiff is asserting that CHL breached the CBA by terminating her without cause, and that SEIU breached the CBA by failing to file grievances on her behalf. Additionally, the claims implicate the DFR because Plaintiff is alleging that SEIU has failed to serve her interests under the CBA. The claims are "inextricably interdependent" because, to prevail against either CHL or SEIU,

---

[2] CHL and SEIU have both moved to dismiss this count, because the complaint did not specify whether it was asserted against one or both Defendants. Plaintiff clarified at the hearing that this count is against SEIU only.

Plaintiff must not only show that her termination was contrary to the CBA, but also that SEIU breached its duty by failing to initiate the grievance procedure.[3] *See DelCostello*, 462 U.S. at 165-66.  Similarly, the Chapter 93A claim is hybrid because it asserts that SEIU breached the DFR and also violated the terms of the CBA by failing to file grievances.  Accordingly, Counts II, V, VI, and VII are preempted and must be dismissed.[4]

### Conclusion

For the reasons set forth above, Community Health Link, Inc.'s partial motion to dismiss (Docket No. 6) is ***granted*** and SEIU Local 509's motion to dismiss (Docket No. 8) is ***granted***.  Counts I, II, IV, V, VI, and VII of Plaintiff's complaint are hereby dismissed.

**SO ORDERED.**

> /s/ *Timothy S. Hillman*
> **TIMOTHY S. HILLMAN**
> **DISTRICT JUDGE**

---

[3] Regarding the claim against CHL, Plaintiff would need to prove SEIU's breach of duty as a means of bypassing the requirement for exhaustion of grievance procedures. *See DelCostello*, 462 U.S. at 163-64.

[4] Both defendants also argue that, even if Plaintiff's claims were construed (or "refashioned") as federal claims based on section 301 or the DFR, they are subject to a six-month statute of limitations.  I need not reach this issue because, although Plaintiff's filings are less than models of clarity, it is apparent from her responses in opposition to the instant motions that she did not intend to bring her claims under federal law.